Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 0031 | DATE | 6/27/2001 |
| CASE TITLE | Regions Bank vs. Blount Parrish & Co., Inc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss (Doc. No. 5-1) is granted and the complaint is dismissed without prejudice. The court will, however, entertain a motion to intervene by a party who has standing. Any such motion should be brought within 21 days.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | JUN 28 2001 date docketed | 11 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 6/27/2001 date mailed notice | |
| ETV | courtroom deputy's initials | FILED FOR DOCKETING 01 JUN 28 AM 7:39 Date/time received in central Clerk's Office | ETV mailing deputy initials |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| REGIONS BANK, an Indenture Trustee, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BLOUNT PARRISH & COMPANY, INC., ) <br> ) <br> Defendant. ) | No. 01 C 0031 <br><br> Judge Rebecca R. Pallmeyer |

**DOCKETED**
**JUN 2 8 2001**

## MEMORANDUM OPINION AND ORDER

This action is brought on behalf of all persons who purchased resource recovery bonds issued by the city of Wood River, Illinois in order to finance a project to convert waste glass into tile. After the project failed, Plaintiff Regions Bank, Indenture Trustee for the bondholders, brought this suit against Defendant Blount Parrish & Company Inc., the underwriter of the bonds, alleging that Defendant made material misrepresentations on the offering memorandum in violation of Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and in violation of Illinois common law. Defendant Blount Parrish now moves to dismiss, arguing that Plaintiff lacks standing to pursue a fraud claim on behalf of the bondholders. Because the court finds that the Indenture does not provide Plaintiff with standing to bring this claim, Defendant's motion is granted.

## FACTUAL BACKGROUND

For purposes of this motion, the court accepts Plaintiff's allegations as true. In

September 1998, the City of Wood River, Illinois ("City") issued resource recovery revenue bonds for the construction of a facility that would convert recycled or waste glass into tile products ("Project"). (Complaint ¶¶ 1, 11.) The Project was owned and operated by Enviro-Stone, which agreed to provide the financing for the Plant that would manufacture the tile. (*Id.* ¶ 12.) In order to pay for the construction and start-up of the Project, Environmentally Correct Products, Inc., the owner of Enviro-Stone, entered into an agreement with Defendant Blount Parrish, an Alabama corporation, in which Defendant agreed to underwrite approximately $11.5 million in revenue bonds and to sell the bonds to the public in exchange for a fee. (*Id.* ¶ 14.) In September 1998, Blount Parrish entered into a second agreement with the City in which it agreed to purchase the bonds from the City for resale. (*Id.* ¶¶ 15, 16.)

The bonds consisted of two series in a total aggregate principal amount of $12.8 million. (*Id.* ¶ 27.) Pursuant to the terms of an indenture agreement between Plaintiff Regions Bank and the City of Wood River, approximately $11.5 million received from the sale of the Series 1998A bonds was deposited into an account called the "1998 Construction Fund" for the payment of eligible costs of the project. (*Id.* ¶ 28.) As security for the payment of the bonds, Enviro-Stone entered into a guaranty agreement with Plaintiff. (*Id.* ¶ 29.) At the same time, the City and Enviro-Stone entered into a lease agreement whereby Enviro-Stone was to make monthly payments to Plaintiff in an amount sufficient to pay the principal and interest on the bonds when due. (*Id.* ¶ 30.) Interest on the bonds was to be paid semi-annually on each March 1 and

September 1, starting on March 1, 1999. (Offering Memorandum, Ex. A. to Complaint).

The Project, however, soon failed; Enviro-Stone found itself unable to make the tile from glass, and, thus, it was soon unable to make its payments to Plaintiff. (Complaint ¶¶ 30, 35.) Enviro-Stone missed its first monthly payment on September 30, 1999 and missed each payment thereafter, leaving Plaintiff unable to pay the bondholders the March 1, 2000 interest payment of $496,250. (*Id.* ¶¶ 30, 31.) As a result of Enviro-Stone's missed payments and pursuant to the Indenture agreement, Plaintiff accelerated the payments due under the bonds; Enviro-Stone then owed $13,439,217 by March 31, 2000. (*Id.* ¶ 32.) Enviro-Stone defaulted on that payment and, therefore, the provisions of the Indenture concerning "Events of Default" now govern. (*Id.* ¶ 33.)

On January 3, 2001, Plaintiff brought this two-count complaint on behalf of all bondholders. Plaintiff's suit is not related to Enviro-Stone's default, but is, instead, an action for fraud against Defendant Blount Parrish. According to Plaintiff, in connection with the sale of the bonds, Defendant wrote an "Offering Memorandum" which contained numerous misrepresentations and failed to disclose that the technology to be used in the Project was experimental, untested, and risky. (*Id.* ¶¶ 18, 19.) Plaintiff alleges that material facts omitted from the Memorandum included, among other things: (a) the technology was experimental; (b) the technology had never been used in the United States on a scale similar to the Project; and (c) the technology might not be successfully employed in the Project. (*Id.*) Additionally, Plaintiff alleges that the Memorandum contained several false statements, such as assertions that the

3

technology had already been proven effective and had been used in the Czech Republic. (*Id.* ¶¶ 20-22.) According to Plaintiff, such material misrepresentations hid the significant risks attached to the Project in order to sell the bonds. (*Id.* ¶¶ 19, 20.) Plaintiff now seeks compensatory damages on behalf of the bondholders, punitive damages, and the reasonable costs and expenses incurred by the bondholders, including attorney and expert fees. (*Id.* ¶ 48.)

Defendant challenges Plaintiff's standing to sue. To support its standing to bring this action on behalf of the bondholders, Plaintiff points to the following language of the Indenture:

> *Section 7.08. Other Remedies.* If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy by proceeding at law or in equity to collect the principal of, premium, if any, or interest on the Bonds or to enforce the performance of any provision of the Bonds, this Indenture, the Facility Lease Agreement or the Guaranty.
>
> * * *
>
> *Section 8.05. Duties of Trustee.* a) If an Event of Default has occurred and is continuing, the Trustee shall exercise its rights and powers and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of the person's own affairs.

(Indenture § 7.08, 8.05, Ex. E to Complaint).

Defendant counters that these provisions allow Plaintiff to pursue an action to collect the principal of or interest on the bonds, but do not support Plaintiff's standing to bring any fraud claims on behalf of the bondholders and, as such, this court must dismiss this action.

4

# DISCUSSION

Dismissal of a claim under Rule 12(b)(6) is proper when no relief can be granted under any set of facts that can be proved consistent with the allegations of the complaint. *Harris Trust & Sav. Bank v. E-II Holdings, Inc.* 926 F.2d 636, 641 (7th Cir. 1991). Written instruments that are attached to and referred to in the complaint may be considered on a motion to dismiss, *see, e.g., Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998) (quoting *Wright v. Associated Ins. Cos., Inc.,* 29 F.3d 1244, 1249 (7th Cir. 1994)), and both parties here have referred to specific provisions of the Indenture in support of their positions. The sole issue before this court is whether, under the terms of the Indenture, Plaintiff has standing to bring the instant suit on behalf of the bondholders.

## A. Language of the Indenture

Plaintiff alleges that under the Indenture, it has the broad power as trustee to pursue all claims on behalf of the bondholders, including the instant fraud claim. Because a private action for money damages under Rule 10b-5 must be brought by the actual purchaser or seller of securities, *see Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731-33 (1975), and Plaintiff admits that it neither sold nor purchased the bonds involved in this action, the right to pursue this claim must have been assigned by the bondholders in order for Plaintiff to proceed with this suit. To determine if those rights have been so assigned, the court must turn to the provisions of the Indenture. *See, e.g., Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 464-65 (1980)(the powers of an indenture trustee derive from the instruments creating the trust relationship);

see also *Continental Bank, N.A. v. Caton DBLKM, Inc.*, No. 88-1611-C, 1990 WL 129452, at *5 (D. Kan. Aug. 6, 1990) (whether an indenture trustee has the authority to bring Rule 10b-5 securities fraud claims must be decided from the terms of the trust indenture). The trust indenture sets forth the rights and powers of the trustee and those powers cannot be expanded in contradiction of the indenture. *Premier Bank v. Tierney*, 114 F. Supp. 2d 877, 881 (W.D. Miss. 2000) (citing *Meckel v. Continental Resources Co.*, 758 F.2d 811, 816 (2d Cir. 1985))("Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement.")

Plaintiff asserts that Section 7.08 of the Indenture gives the Trustee the authority to bring any suit designed to collect the principal and interest from the bonds, including a fraud claim. As noted, Section 7.08 provides that in the event of a default, the Trustee "may pursue any available remedy . . . to collect the principal of, premium, if any, or interest on the Bonds or to enforce the performance of any provision of the Bonds, this Indenture, the Facility Lease Agreement or the Guaranty." In Plaintiff's view, the "any available remedy" language gives the trustee standing to assert any claims arising from the agreements, state common law, or the federal or state securities laws, including this fraud action. This court disagrees.

While the Seventh Circuit has not directly addressed this issue, other jurisdictions have found that language similar to that in Section 7.08 does not provide the indenture trustee with standing to bring a fraud claim. For example, in

6

*Continental Bank, N.A. v. Caton DBLKM, Inc.*, No. 88-1611-C, 1990 WL 129452, at *1-2 (D. Kan. Aug. 6, 1990), plaintiff, an indenture trustee, brought a fraud claim on behalf of bondholders against the defendant underwriters of the bond, claiming that defendant had, among other things, analyzed the viability of the bond program and discovered it would fail, but never disclosed this information to the trustee or the bondholders. To support its standing to bring the claim, plaintiff Continental Bank pointed to the following language of the indenture:

> *Remedies Vested in Trustee.* All rights of action . . ., under this Indenture or under any of the Bonds may be enforced by Trustee . . . and *any such suit or proceeding instituted by Trustee shall be brought in its name as Trustee without the necessity of joining as plaintiffs or defendants any Owner of the Bonds,* and any recovery of judgment shall be for the equal and ratable benefit of all Owners of the outstanding bonds.

*Id.* at *4 (alteration in original). Though the language "any such suit" might lead one to believe plaintiff had standing to pursue fraud claims, the court noted that, in fact, the wording referred only to an action brought "under" the trust indenture or any of the bonds. *Id.* at *5. Because the court found that no other provision of the indenture defined fraud actions as arising "under" the indenture, the indenture trustee did not have standing to pursue the fraud claim. *Id.* As the court explained, "Plaintiff cannot successfully transform its general administrative authority under the Trust Indenture into a carte blanche assignment of the bondholders' claims arising from the common law or the securities law." *Id.*; *see also United Bank v. Sun Mesa Corp.*, 119 F.R.D. 430, 431-32 (D. Ariz. 1988)(fraud claims cannot be considered a remedy for default because such claims could be "asserted regardless of breach" and, therefore, indenture trustee

7

lacked standing to bring state law fraud claims where indenture only authorized trustee to assert claims for default).

Similarly, in *Premier Bank v. Tierney*, 114 F. Supp. 2d 877, 879 (W.D. Miss. 2000), the plaintiff bank, as indenture trustee for the purchasers of industrial revenue bonds, filed an action for fraud against directors, accountants and attorneys for a group of companies which guaranteed the bonds. After the companies went bankrupt, the bank brought suit for fraud, alleging that the indenture gave it authority to pursue all claims on behalf of the bondholders. *Id.* at 881. To support its argument, the trustee pointed to the following language of the indenture:

> All rights of action . . . *under this Mortgage and Indenture of Trust or under any of the bonds or coupons* may be enforced by the Trustee . . . and *any such suit* or proceeding instituted by the Trustee shall be brought in its name as Trustee without the necessity of joining as plaintiffs or defendants any holders of the Bonds, and any recovery of judgment shall . . . be for the equal benefit of the holders of the outstanding Bonds and coupons.

*Id.* at 881. (alteration in the original). The court disagreed that this provision gave plaintiff standing to sue, finding instead that the "any such suit" language "speaks only to legal actions brought to enforce the Indenture, Mortgage, and bonds or coupons" and, as such, "[n]o authority is conferred to pursue separate tort actions at all." *Id.* Because the bondholders did not clearly assign such rights to the bank trustee in the indenture, the bank did not have standing to bring this suit. *Id.*

As with the indenture trustees in *Continental Bank* and *Premier Bank*, Plaintiff here has been given the power under the Indenture to pursue "any available remedy,"

8

but that language refers only to actions designed to "collect the principal of, premium, if any, or interest on the Bonds" or to enforce the performance of any provision of the bonds or the Indenture. Section 7.08 does not give Plaintiff power to protect any and all rights of the bondholders or pursue bondholder's tort claims, nor does Plaintiff point to any other section of the Indenture where the bondholders assigned such claims to it. Without such an assignment in the Indenture, Plaintiff cannot proceed with an action for fraud.

In contrast to the Indenture in Plaintiff's case, courts allow an indenture trustee standing to bring tort claims on behalf of the bondholders only when the indenture carries a broad grant of authority to sue on behalf of the bondholders. For example, in *In re Washington Pub. Power Supply Sys. Sec. Litig. (WPPSS)*, 623 F. Supp. 1466, 1483 (D. Wash. 1985), *aff'd*, 823 F.2d 1349 (9th Cir. 1987), the Bond Resolution authorized the trustee

> to institute such suits, actions and proceedings at law or in equity for the collection of all sums due in connection with the Bonds *and to protect and enforce its rights and the rights of the holders of the Bonds under the Resolution . . . in the enforcement of any other legal or equitable right* as the Bond Fund Trustee, being advised by counsel, shall deem most effectual to enforce any of its rights or the rights of the holders of the Bonds . . . .

*Id.* (emphasis added). The court found that this language was broad enough that it granted the trustee authority to bring both suits to collect the sums due in connection with the bonds and also to bring a tort claim, including a securities fraud claim, on behalf of the bondholders. *Id.* at 1483-84; *see also Continental Bank v. Ludlow*, 777 F.

9

Supp. 92, 97-98 (D. Mass. 1991) (trustee has standing to bring contract claim on behalf of bondholder where Bond Resolution allowed trustee to "take such steps and institute such suits, actions, or proceedings in its own name, . . ., or in the name of the Bondholders . . . for the protection and enforcement of the rights of the holder of bonds . . .").

Unlike the broad language in the *WPPSS* indenture, the remedies clause in Plaintiff's case omits any reference to protecting and enforcing the rights of the bondholders besides collecting on the bond or enforcing the performance of any provision of the bonds. Without such language, Plaintiff does not have standing to bring the instant suit.

### B. Distinction between pre- and post-default duties

Plaintiff argues, however, that even if the Indenture limited it from bringing this suit pre-default, this court should make a distinction between the Trustee's pre- and post-default duties and find that such a suit is allowed post-default. In Plaintiff's view, the duties of the trustee absent a default are typically mechanical and explicitly dictated by the terms of the indenture, but post-default duties are less administrative in nature and more like the duties of a common law fiduciary. Under this construction, a trustee's duties post-default are flexible and less easily defined. Plaintiff cites section 8.05 of the Indenture as explicitly recognizing the distinction between the Trustee's pre- and post-default authority. Section 8.05 provides:

> *Duties of Trustee.* (a) If an Event of Default has occurred and is continuing, the Trustee shall exercise its rights and powers and use the same degree of care and skill in their exercise as a prudent person would

exercise or use under the circumstances in the conduct of the person's own affairs.

(b) *Except during the continuance of an Event of Default,*
(1) The Trustee need perform only those duties that are specifically set forth in the Indenture and no others . . .

(Indenture § 8.05, Ex. E to Complaint)(emphasis added).

This court is not persuaded by Plaintiff's proposed distinction. Though courts have recognized that an indenture trustee's duties change after a default occurs, the change does not authorize an indenture trustee to take actions not otherwise contemplated by the indenture. For example, in *Beck v. Manufacturers Hanover Trust Co.*, 218 A.D.2d 1, *3-4 (N.Y. App. Div. 1995), holders of defaulted bearer bonds brought suit for breach of fiduciary duty against the successor indenture trustee of the collateral securing payment of the defaulted bonds. *Id.* at *3-4. The court noted that subsequent to default, "the indenture trustee's obligations come more closely to resemble those of an ordinary fiduciary, regardless of any limitations or exculpatory provisions contained in the indenture." *Id.* at *12. Thus, the court found that the "single relevant inquiry in this case" was not whether the trustee had acted in accordance with the terms of the trust indentures, but, instead, whether the trustee had fulfilled its fiduciary responsibilities to the trust which were "in some respects broader than the obligations specified in the indentures." *Id.* at *10. The court explained, however, that the indenture is not rendered irrelevant by this analysis; rather "[t]he trustee must in the postdefault context act prudently, but *only in the exercise of those rights and powers granted in the indenture.*" *Id.* at *13 (emphasis

11

added). In this way, "[t]he scope of the trustee's obligation . . . is still circumscribed by the indenture, albeit less narrowly." *Id.*

Plaintiff may have a responsibility, post-default, to fulfill broader fiduciary responsibilities to the trust, but this court is unwilling to find that this duty allows this court to assign the bondholders' fraud claims to Plaintiff where the bondholders did not see fit to so assign those claims under the Indenture. The distinction between pre- and post-default fiduciary responsibilities does not support the conclusion that Plaintiff has standing to bring this suit. While the Indenture itself may distinguish between the obligations of the trustee prior to and after a default, this court declines to find that the post-default duties of the Trustee include rights of actions not specifically authorized by the Indenture.

### C. No Action Clause

Finally, Plaintiff argues that if the Trustee cannot bring the instant case, the "no action" clause included in section 7.11 of the Indenture would leave the bondholders powerless to remedy Defendant's alleged fraud and would contradict the intent of the Indenture. That section states:

> *Limitation on Suits. An Owner of a Bond may not pursue any remedy with respect to this Indenture, the Bonds or the Facility Lease agreement,* unless (a) the Owner gives the Trustee notice stating that an Event of Default is continuing, (b) the Owners of at least a majority in principal amount of the Outstanding Bonds make a written request to the Trustee to pursue the remedy, (c) such Owner or Owners offer to the Trustee indemnity satisfactory to the Trustee against any loss, liability or expense, and (d) the Trustee does not comply with the request within 60 days after receipt of the request and the offer of indemnity.

(Indenture §7.11, Ex. E to Complaint)(emphasis added).

12

In *Kusner v. First Pennsylvania Corp.*, 531 F.2d 1234, 1239 (3rd Cir. 1976), the Third Circuit rejected a similar argument that construed a "no action" provision to bar a bondholder from bringing an action under the federal securities laws. That indenture prohibited suits "for the execution of any trust or power hereof, or for the enforcement of any other remedy under or upon this Indenture." *Id.* The court held that the provision did not bar a bondholder from pursing an action for fraud because the right to bring a Rule 10b-5 securities fraud claim did not derive from the indenture, but from federal law. *Id.*

Plaintiff's contention that section 7.11 would bar the individual bondholders from bringing this suit likewise lacks merit where the Indenture does not assign Plaintiff the bondholder's fraud claims. As 7.11 plainly states, this provision applies only to remedies "with respect to this Indenture, the Bonds or the Facility Lease Agreement." As this court has already explained, the instant action for fraud is not a remedy which falls under the Indenture; indeed, it is for this very reason that Plaintiff does not have standing to bring the suit. As such, the no-action provision does not apply to these claims. The individual bondholders would, therefore, have standing to pursue such claims. *See United Bank v. Sun Mesa Corp.*, 199 F.R.D. 430, 432 (D. Ariz. 1988)(allowing individual bondholders to intervene in a securities fraud action after finding that the indenture trustee, United Bank, did not have standing to bring the suit).

## CONCLUSION

Because the Indenture does not give Plaintiff the authority to bring a securities

fraud or common law fraud claim on behalf of the bondholders, this court concludes that Plaintiff does not have standing to bring this action. Defendant's motion to dismiss (Doc. No. 5-1) is therefore granted and the complaint is dismissed without prejudice. The court will, however, entertain a motion to intervene by a party who has standing. Any such motion should be brought within 21 days.

ENTER:

Dated: June 27, 2001

REBECCA R. PALLMEYER
United States District Judge